**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **D.R. HORTON, INC. – GULF COAST** | **CIVIL ACTION** |
| **VERSUS** | **NO. 26-84** |
| **JANIKA ROYAL, INDIVIDUALLY AND ON BEHALF OF HER MINOR CHILD, T.R., ET AL.** | **SECTION "O"** |

**ORDER AND REASONS**

Before the Court are (1) a motion[1] to dismiss under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) filed by Defendants Janika Royal, individually and on behalf of her minor child, T.R., Trumaine Lee, and Tyon Brown (collectively, "Royal"); and (2) a motion[2] to compel arbitration and enjoin and stay the claims against it in state court filed by Plaintiff D.R. Horton, Inc. – Gulf Coast ("D.R. Horton"). For the following reasons, Royal's motion to dismiss is **DENIED** and D.R. Horton's motion to compel arbitration is **GRANTED**.

## I. BACKGROUND

This case arises from an arbitration clause in a contract for the purchase of a newly-built residential home constructed and sold by D.R. Horton. In October 1, 2023, Janika Royal and D.R. Horton executed a Real Estate Purchase Contract (the "Contract") for the purchase of a single-family residence located at 6602 Delta Ridge

[1] ECF No. 15.
[2] ECF No. 11.

Avenue, Slidell, Louisiana 70461.[3] The Contract contains a dispute resolution provision requiring that disputes will be "submitted to binding arbitration under both Louisiana law and the Federal Arbitration Act" (the "Arbitration Provision").[4] The Arbitration Provision further specifies that "the arbitration will be administered by the AAA,[5] using its 'Construction Industry Arbitration Rules'[.]"[6] Under the Contract, the parties agreed to arbitrate "any and all claims, disputes, and causes of action of whatever nature involving or relating to the Contract, the Home, the Property, any warranties, the Parties' interactions, or otherwise[.]"[7]

On December 1, 2025, the Royal Defendants in this federal litigation filed a Petition for Damages in the 19th Judicial District Court for the Parish of East Baton Rouge, Docket No. 771190, alleging numerous claims against D.R. Horton and others arising from Ms. Royal's Real Estate Purchase Contract with D.R. Horton. As plaintiffs in the state court proceeding *Royal, et al. v. D.R. Horton, Inc. – Gulf Coast, et al.*, the Royal Defendants pursue numerous forms of relief and alleged damages, including "rampant" mold and mildew damage, bodily harms, health problems, medical expenses, pain and suffering, and attorney's fees due to alleged breach of warranties, breach of contract, fraudulent inducement, and other claims arising out of Ms. Royal's Contract and dealings with D.R. Horton.[8]

---

[3] ECF No. 11-2 (Real Estate Purchase Contract).
[4] *Id.* ¶ 15.
[5] The AAA is defined in the prior sub-paragraph as the American Arbitration Association. *Id.*
[6] *Id.*
[7] *Id.*
[8] ECF No. 11-3 (state-court plaintiffs' Petition for Damages). In the state-court petition, the plaintiffs allege that Ms. Royal contracted with D.R. Horton "for the purpose of providing and

On January 14, 2026, D.R. Horton filed a complaint pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. § 4, to petition this Court for an order compelling Royal to proceed to arbitration to resolve all claims against it, enjoining Royal from proceeding with the claims advanced in state court, and awarding D.R. Horton all costs and fees incurred in these proceedings. Now, D.R. Horton moves the Court for an order compelling arbitration and staying these proceedings, as well as enjoining Royal from proceeding with the state-court action against D.R. Horton, and, finally, awarding D.R. Horton its attorneys' fees and costs. Royal opposes.

Royal separately files a motion to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim, which D.R. Horton opposes. The Court first considers Royal's motion to dismiss before considering D.R. Horton's motion to compel arbitration and enjoin Royal from proceeding in state court.

## II. LEGAL STANDARD

### A. Federal Rule of Civil Procedure 12(b)(6)

Rule 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). A complaint that does not satisfy Rule 8(a)(2)'s pleading standard fails to state a claim upon which relief can be granted. *See generally* FED. R. CIV. P. 12(b)(6). "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than

---

moving her family, including her unemancipated minor child, [T.R.] into what she believed to be a well-designed and well-constructed home that was free of defects and suitable and comfortable to live and raise a family in." *See id.* ¶ 10.

an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell. Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "A pleading that offers 'labels and conclusions' or 'a formulaic recitations of the elements of a cause of action will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

"To survive a motion to dismiss" under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "Although '[courts] accept all well-pled facts as true, construing all reasonable inferences in the complaint in the light most favorable to the plaintiff, conclusory allegations unwarranted factual inferences, or legal conclusions are not accepted as true.'" *Hodge v. Engleman*, 90 F.4th 840, 843 (5th Cir. 2024) (quoting *Allen v. Hays*, 65 F.4th 736, 743 (5th Cir. 2023)).

**B. Motion to Compel Arbitration**

"The FAA was Congress's way of responding to the general 'hostility of American courts to the enforcement of arbitration agreements.'" *Lopez v. Cintas Corp.*, 47 F.4th 428, 431 (5th Cir. 2022) (quoting *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 111 (2001)). "Contrary to that prior practice, the FAA establishes 'a

liberal federal policy favoring arbitration agreements.'" *Id.* (quoting *Epic Sys. Corp. v. Lewis*, 584 U.S. 497, 505 (2018)). "To that end, courts must 'rigorously enforce arbitration agreements according to their terms.'" *Id.* (quoting *Am. Express Co. v. Italian Colors Rest.*, 570 U.S. 228, 233 (2013)).

Section 3 of the FAA is straightforward: If "any issue" is "referable to arbitration" under a written agreement to arbitrate, the Court "shall . . . stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement[.]" 9 U.S.C. § 3. The "plain statutory text" of Section 3 of the FAA "requires" the Court to "stay [this] proceeding" if "any issue" must be arbitrated. *Smith v. Spizzirri*, 601 U.S. 472, 476 (2024) (citation omitted).

## III. ANALYSIS

### A. Royal's Rule 12(b)(6) Motion to Dismiss

Royal contends that D.R. Horton's complaint seeking to compel arbitration pursuant to the FAA fails to state a claim upon which relief can be granted because the FAA is not applicable. According to Royal, D.R. Horton's complaint fails to plead allegations sufficient to establish that the transaction at issue (Ms. Royal's purchase of a newly constructed home) involved interstate commerce.

Royal reads the statute—and the Contract—too narrowly. Section 2 of the FAA covers arbitration provisions in "a contract evidencing a transaction involving commerce to settle by arbitration." 9 U.S.C. § 2. The Supreme Court interprets "'involving commerce' in the FAA as the functional equivalent of the more familiar term 'affecting commerce'—words of art that ordinarily signal the broadest

permissible exercise of Congress' Commerce Clause power." *Citizens Bank v. Alafabco, Inc.*, 539 U.S. 52, 56 (2003) (citing *Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 273–74 (1995)). "'[E]nforcement of arbitration agreements [is thus] within the full reach of the Commerce Clause,'" which "encompasses a wider range of transactions than those actually 'in commerce'—that is, 'within the flow of interstate commerce[.]'" *Id.* (citations omitted). As such, a party invoking the FAA does not have to show its own contract had any "specific effect upon interstate commerce." *Id.* at 56-57. It is sufficient that "in the aggregate the economic activity in question would represent 'a general practice . . . subject to federal control.'" *Id.* (quoting *Mandeville Island Farms, Inc. v. Am. Crystal Sugar Co.*, 334 U.S. 219, 236 (1948)).

Here, as alleged in the Complaint, "[t]he Contract and Arbitration Clause, executed by and between a Delaware and Texas corporation and a Louisiana citizen, . . . involv[es] the construction and agreement to purchase a home[.]" The relevant contract involves a non-Louisiana builder's construction of a home in Louisiana. "Citizens of different states engaged in performance of contractual operations in one of those states are engaged in a contract involving commerce under the FAA." *See Mesa Operating Ltd. P'ship v. Louisiana Intrastate Gas Corp.*, 797 F.2d 238, 243 (5th Cir. 1986), *abrogated on other grounds sub nom. by Dr. Kenneth Ford v. NYLCare Health Plans of Gulf Coast, Inc.*, 141 F.3d 243 (5th Cir. 1998). Ms. Royal's and D.R. Horton's contract thus involves commerce and necessarily falls within the scope of Section 2.

Consider *Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265 (1995). There, the Alabama Supreme Court held that the home-protection plan signed in Alabama between Alabama homeowners and the local office of a pest control company involved a transaction that was "primarily local and not 'substantially' interstate." 513 U.S. at 268-69 (observing that the pest control company was a multistate firm that shipped treatment and repair material from out of state). The United States Supreme Court reversed, holding that "'involving,' like 'affecting,' signals an intent to exercise Congress' commerce power to the full[,]" and that "even if the parties did not contemplate an interstate commerce connection," what is required is whether the transaction involved commerce. *Id.* at 277, 281-82. *Alafabco* is in accord. The debt-restructuring agreements "were executed in Alabama by Alabama residents" and still they satisfied the involving-commerce test. 539 U.S. at 57. The Supreme Court also found that the state court's search for proof that the loans "originated out-of-state" was "misguided." *Id.* at 56. Make no mistake, "the FAA's reach" is broad. *See id.*

Royal seeks to downplay the interstate nature of the contract, arguing that Ms. Royal merely locally purchased Louisiana property. Considering the correct framing, however, D.R. Horton's complaint states a claim. As the Complaint and associated filings make clear, the Contract is an agreement for more than merely the sale of an existing home—it was entered into for D.R. Horton's construction and sale to Ms. Royal of a newly-built single-family residence. As alleged in the state-court petition, Royal challenges D.R. Horton's conduct as builder of the home and

seeks to recover against D.R. Horton, as builder, for defectively constructing the home, breaching warranties, and breaching the Contract.

Critically, the Contract contains both a warranty and a dispute-resolution obligation that extends past the closing.[9] Residential construction is the type of activity, in the aggregate, that impacts substantially on interstate commerce as it utilizes building materials, fixtures, appliances, labor, and insurance that all cross state lines. *See Alafabco*, 539 U.S. at 56-57. Furthermore, as D.R. Horton sets forth in its reply, courts routinely determine that home construction contracts involve interstate commerce under the FAA. *See* ECF No. 21 (citing cases); *see, e.g., Green Tree Servicing v. Haynes*, No. 3:16-cv-551-WHB-JCG, 2017 WL 7736130, at *4 (S.D. Miss. Jan. 19, 2017) (finding a building contract to be performed by individuals/entitles in different states to "involve interstate commerce" under the FAA). Considering the scope of the FAA, the diversity of the parties, the interstate new-build construction nature of the Contract, and the arbitration provision itself, Royal's motion to dismiss under Rule 12(b)(6) must be denied.

**B. D.R. Horton's Motion to Compel Arbitration**

The Court next considers D.R. Horton's motion to compel arbitration under the FAA, 9 U.S.C.§§ 4.

Compelling arbitration under the FAA proceeds in "two analytical steps." *Kubala v. Supreme Prod. Servs., Inc.*, 830 F.3d 199, 201 (5th Cir. 2016). At step one, the Court "appl[ies] state law to determine whether the parties formed 'any

[9] ECF No. 11-2 (Real Estate Purchase Contract).

arbitration agreement at all.'" *Matter of Willis*, 944 F.3d 577, 579 (5th Cir. 2019) (italics omitted) (quoting *Kubala*, 830 F.3d at 201). At step two, the Court "interpret[s] the contract 'to determine whether this claim is covered by the arbitration agreement.'" *Id.* (italics omitted) (quoting *Kubala*, 830 F.3d at 201). But the step-two analysis changes if the arbitration agreement "delegates to 'the arbitrator the primary power to rule on the arbitrability of a specific claim.'" *Id.* (quoting *Kubala*, 830 F.3d at 201). "In such a case," the Court "ask[s] only whether there is a valid delegation clause." *Id.* "If there is a delegation clause, the motion to compel arbitration should be granted in almost all cases." *Kubala*, 830 F.3d at 202.

**1. The Arbitration Provision is a Valid Agreement to Arbitrate.**

Step one of the two-part analysis is satisfied because the arbitration provision in the contract between D.R. Horton and Ms. Royal is a valid agreement to arbitrate under Louisiana law.

In determining this first step—whether there is a valid agreement to arbitrate—the Court considers whether the parties "entered into any arbitration agreement at all." *Kubala*, 830 F.3d at 201. This requires an analysis of the "agreement's existence rather than its validity." *Hill v. Jackson Offshore Holdings, L.L.C.*, 175 F.4th 324, 339 (5th Cir. 2026) (Douglas, J., concurring) (citing, *inter alia*, *Arnold v. Homeaway, Inc.*, 890 F.3d 546, 550 (5th Cir. 2018) ("In conducting [an] inquiry [into whether the parties formed an arbitration agreement], we distinguish between 'validity' or 'enforceability' challenges and 'formation' or 'existence' challenges.")). "This formation versus validity distinction is critical to the

court's inquiry because the court has authority and responsibility to decide the matter when the very existence of a contract containing the relevant arbitration agreement is called into question." *Id.* (cleaned up).

The Court applies "ordinary principles of state contract law" to determine whether a valid agreement to arbitrate exists. *Halliburton Energy Servs., Inc. v. Ironshore Specialty Ins. Co.*, 921 F.3d 522, 530 (5th Cir. 2019) (citations omitted). Under the contract between Ms. Royal and D.R. Horton, Louisiana law controls.[10] And under Louisiana law, "[a] contract is an agreement by two or more parties whereby obligations are created, modified, or extinguished." LA. CIV. CODE ANN. art. 1906. The requirements for a valid contract in Louisiana are: "(1) the parties must possess the capacity to contract; (2) the parties' mutual consent must be freely given; (3) there must be a certain object for the contract; and (4) the contract must have a lawful purpose." *Provenza v. Cent. & Sw. Servs., Inc.*, 775 So. 2d 84, 89 (La. App. 2 Cir. 2000). "Consent is perfected through offer and acceptance, LA. CIV. CODE ANN. art. 1927, and consent may be vitiated by "vices of consent," including error, fraud, or duress, *id.* art 1948." *Hill*, 175 F.4th at 339 (Douglas, J., concurring) (citing Saul Litvinoff, *Vices of Consent, Error, Fraud, Duress and an Epilogue on Lesion*, 50 La. L. Rev. 1 (1989)).

Ms. Royal does not dispute that she had the capacity to consent. Nor does she dispute that there was a "certain object for the contract" and a "lawful purpose" for

[10] *See* ECF No. 8-2 ¶ 15 ("If a Dispute is not resolved by mediation, it will be submitted to binding arbitration under both Louisiana law and the Federal Arbitration Act."). The parties agree that Louisiana law governs.

the contract—that is, the newly constructed home she purchased and received. Rather, Ms. Royal chiefly protests that she did not properly read and understand the Arbitration Provision and therefore did not properly consent to it. In her unsworn declaration, she states that she "never heard of arbitration before" and "did not see or understand that the contract contained an arbitration clause" when signing the agreement and that she felt like she needed to "act quickly" to secure the newly constructed home.[11] Ms. Royal argues that she therefore did not consent to the arbitration provision because it was "not presented as a standalone agreement" and was "embedded within a multi-page Real Estate Purchase Contract."

Ms. Royal's arguments that she did not consent to arbitrate fail. The arbitration agreement between Ms. Royal and D.R. Horton was validly formed under Louisiana law. Ms. Royal admits that she voluntarily signed and initialed each page of the contract.[12] Section 15 of the contract is conspicuously entitled "**DISPUTE RESOLUTION**" and states, in bold, that any disputes not resolved by mediation are subject to arbitration.[13] "It is well settled that a party who signs a written instrument is presumed to know its contents and cannot avoid its obligations by contending that he did not read it, that he did not understand it, or that the other party failed to explain it to him." *Aguillard v. Auction Mgmt. Corp.*, 908 So. 2d 1, 22 (La. 2005) (enforcing an arbitration clause in a consumer contract).

[11] ECF No. 16-1 ¶¶ 9, 13-14, 25.
[12] *Id.* ¶ 18; *see also* ECF No. 11-2, ECF No. 11-3 (state-court petition) ¶¶ 8, 11.
[13] ECF No. 11-2 ¶ 15(B).

Signing a contract holds a signatory to its obligations "save in certain exceptional cases," such as contracts of adhesion or signatures obtained through fraud. *Tweedel v. Brasseaux*, 433 So. 2d 133, 138 (La. 1983) (quoting *Ray v. McLain*, 31 So. 315, 319 (La. 1901)); *see also Boullt v. Sarpy*, 30 La. Ann. 494, 495 (1878) ("[S]ignatures to an obligation are not mere ornaments[.]"). Ms. Royal's contention that she did not properly read the contract (or arbitration provision specifically) when signing it does not succeed in challenging the contract's formation.

Royal also appears to challenge the contract as one of "adhesion" because D.R. Horton allegedly "never clearly disclosed" the arbitration or delegation provisions, thereby rendering the contract and arbitration provision "unconscionable." Louisiana courts have indicated that the defense of unconscionability "can be thought of as lacking the free consent that the Louisiana Civil Code requires of all contracts," which presumably renders the defense one of formation, rather than enforceability, under Louisiana law. *Lafleur v. L. Offs. of Anthony G. Buzbee, P.C.*, 2006-0466 (La. App. 1 Cir. 3/23/07), 960 So. 2d 105, 112; *contra Lopez v. Cintas Corp.*, 47 F.4th 428, 433 (5th Cir. 2022) ("Under Texas law, unconscionability goes to validity rather than formation."). Accordingly, the Court resolves that question under state law.

The Court finds that neither the arbitration provision nor contract was unconscionable as adhesionary under Louisiana law. Contracts of adhesion may occur where the contract has "standard form, small print, and most especially the disadvantageous position of the accepting party, which is further emphasized by the

potentially unequal bargaining positions of the parties." *Aguillard*, 908 So. 2d at 10. In this contract, however, just as in *Aguillard*, "the print [was] not unreasonably small." *Id.* Indeed, the entirety of Section 15—that is, the "DISPUTE RESOLUTION" section of the agreement—was emphasized through bolding. Moreover, the "waiver of jury trial" provision was capitalized and bolded with the warning, "BUYER IS ENCOURAGED TO CONTACT AN ATTORNEY IF BUYER DOES NOT UNDERSTAND THE LEGAL CONSEQUENCES OF EXECUTING THIS CONTRACT."[14] The conspicuousness of the bolded "DISPUTE RESOLUTION" section requiring the resolution of disputes by arbitration contrasts with the "two-sentence provision mandating arbitration" that was "camouflaged" and "cloak[ed]" in "boilerplate language regarding rules and risks of participating in the Sky Zone activities" in *Duhon v. Activelaf, LLC*, 2016-0818 (La. 10/19/16), 411 So. 3d 605, 612. What's more, here, the "accepting party" was not placed at an obvious disadvantage by the provisions. *Aguillard*, 908 So. 2d at 10. The arbitration provision preserves all statutory warranties and warranty periods,[15] and, contrary to Royal's assertions, requires D.R. Horton to reimburse the buyer for one-half of the fee for initiating arbitration, whereas D.R. Horton bears the full fee if it initiates arbitration.[16] The Court therefore finds that under Louisiana law, the contract and arbitration provision are not unconscionable.

---

[14] ECF No. 11-2 ¶ 15.
[15] *Id.* ¶ 7.
[16] ECF No. 11-2 ¶ 15(B).

Accordingly, because Ms. Royal cannot successfully challenge the formation of the contract as a whole or the arbitration provision, the arbitration provision is valid.

**2. There is a Valid Delegation Clause.**

Step two is satisfied because the Arbitration Provision contains a valid delegation clause. "Ordinarily[,] the next step—after concluding that there is a valid agreement—is to determine whether *this* claim is arbitrable." *Willis*, 944 F.3d at 583 (citing *Kubala*, 830 F.3d at 201). But D.R. Horton argues there is a delegation clause—specifically, the arbitration agreement's express incorporation of the AAA Construction Industry Arbitration Rules—which delegate all challenges as to the existence, scope, validity or enforceability of both the Contract and the Arbitration Clause to the arbitrator.[17] If the party seeking arbitration argues there is a delegation clause, "the only question, after finding that there is in fact a valid agreement, is whether the purported delegation clause is in fact a delegation clause." *Edwards v. Doordash, Inc.*, 888 F.3d 738, 744 (5th Cir. 2018) (citation omitted).

It is. The parties expressly incorporated into their arbitration agreement the AAA Construction Industry Arbitration Rules.[18] The Fifth Circuit has made clear that the "express adoption" of the Construction Industry Arbitration Rules

---

[17] ECF No. 11-2 ¶ 15

[18] *See* Real Estate Contract, ECF No. 11-2 ¶ 15 ("[T]he arbitration will be administered by the AAA, using its "Construction Industry Arbitration Rules" except as specifically modified herein or required by applicable law.").

"presents clear and unmistakable evidence that the parties agreed to arbitrate arbitrability." *Petrofac, Inc. v. DynMcDermott Petroleum Operations Co.*, 687 F.3d 671, 674-675 (5th Cir. 2012). That is because the rules state that the arbitrator "'shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement.'" *Id.* (quoting Construction Industry Arbitration R-9). The delegation clause is therefore incorporated into the arbitration agreement.

Ms. Royal contends that her challenges to the contract as a whole and to its arbitration provision—that is, her arguments about her failure to read, understand, consent, and the unconscionability of the terms—are specific challenges to the delegation clause itself. Ms. Royal argues that her delegation clause challenge requires this Court to consider the validity and enforceability of the delegation clause separately.

The Court finds that Ms. Royal has not challenged the delegation clause with any specificity. Rather, she merely resorts to her general argument about her failure to read and understand the contract before signing on to the delegation clause, arguing that D.R. Horton "did not explain the delegation structure" and stating in her declaration that she "was never informed about a delegation clause."[19] But the Fifth Circuit has rejected challenges to delegation clauses where the party merely argues "that the contract as a whole (including its arbitration provision) is rendered invalid, but [does] not make any arguments beyond attacking

[19] ECF No. 16-1 ¶ 27.

the Agreement generally." *Hill*, 175 F.4th at 334 (compelling dispute to arbitration because the plaintiff did not explain "*how* he was fraudulently induced into agreeing to the delegation clause specifically or *how* economic duress compelled him to agree to that clause specifically"); *Brown v. Pacific Life Insurance Co.*, 462 F.3d 384 (5th Cir. 2006) (holding that the parties did not specifically challenge the severable arbitration agreement because their arguments did not "distinguish between their attacks on the validity of the [broader] agreements and the arbitration clauses themselves," but instead "assert[ed] only that they would not have entered into the [broader] agreements containing the arbitration clauses" had the other party not made alleged misrepresentations.).[20] The same is true here: Royal's arguments about her failure to read or understand the delegation clause are indistinguishable from her argument that she failed to read and understand the contract as a whole and are unspecific to the delegation clause.

Accordingly, because the contract between D.R. Horton and Ms. Royal contains a valid arbitration with a valid delegation clause, and because Ms. Royal does not challenge the delegation clause with any specificity, D.R. Horton's motion to compel arbitration is granted.

[20] Royal's request for discovery under Fed. R. Civ. P. 56(d) fails because that rule applies to motions for summary judgment, not motions to compel arbitration. Moreover, Royal failed to submit an affidavit or declaration in support of her request for discovery. *See Scotch v. Letsinger*, 593 F. App'x 276, 278 (5th Cir. 2014).

**3. The Direct Benefits Estoppel Doctrine Applies.**

This result—granting D.R. Horton's motion to compel arbitration—applies equally to Ms. Royal's minor child, as well as Trumaine Lee and Tyron Brown. Though they are not signatories to the Contract, invoking the direct benefits estoppel doctrine, D.R. Horton contends that they, too, must be compelled to arbitrate their claims against D.R. Horton. For the reasons set forth in D.R. Horton's motion and reply,[21] the Court agrees.

The Royal Defendants resist this conclusion. But these federal Defendants do not dispute that the Fifth Circuit has adopted the direct benefits estoppel doctrine and that the doctrine may be applied to non-signatories.[22] To be sure, where "a non-signatory 'knowingly exploits the agreement containing the arbitration clause,'" he is bound to arbitrate the claims that seek to benefit from the agreement. *See, e.g., Hellenic Inv. Fund, Inc. v. Det Norske Veritas*, 464 F.3d 514, 518 (5th Cir. 2004). The Fifth Circuit has described the doctrine thusly:

> Direct-benefits estoppel applies to non-signatories who, during the life of the contract, have embraced the contract despite their non-signatory status but then, during litigation, attempt to repudiate the arbitration clause in the contract. A nonsignatory can embrace a contract containing an arbitration contract in two ways: (1) by knowingly seeking and obtaining direct benefits from the contract, or (2) by seeking to enforce the terms of the contract or asserting claims that must be determined by reference to that contract.

*IMA, Inc. v. Columbia Hosp. Medical City at Dallas, Subsidiary L.P.*, 1 F.4th 385, 391 (5th Cir. 2021) (cleaned up); *see also Traders' Mart, Inc. v. AOS, Inc.*, 52,592

---

[21] *See generally* ECF Nos. 11-1, 18.
[22] *See* ECF No. 16 at 11-13.

(La. App. 2 Cir. 4/10/19), 268 So. 3d 420, 428 (describing the same standard under Louisiana law).

These principles apply to require Ms. Royal's family members including Lee and Brown—who in the state-court litigation invoke and allege or seek to benefit from the Contract—to arbitrate their claims against D.R. Horton. Insofar as the federal Defendants argue that Ms. Royal's minor child and Lee and Brown did not benefit from the Contract, such an argument is belied by the state-court petition, which asserts multiple causes of action predicated on construction and warranty obligations undertaken by D.R. Horton pursuant to the Contract with Ms. Royal. *Accord Lennar Homes of Texas Land & Constr., Ltd. V. Whiteley*, 672 S.W.3d 367, 379 (Tex. 2023), *reh'g denied* (Sept. 1, 2023) (determining that a non-signatory subsequent purchaser of a home was bound by the arbitration clause in the builder's original purchase-and-sale agreement because the claims she asserted against the builder arose out of the obligations it incurred under the original agreement). Moreover, as to Ms. Royal's claims on behalf of her minor child, as D.R. Horton points out and Royal fails to controvert, federal courts have required arbitration of claims asserted on behalf of their minor children relating to contracts signed by their parents. *See, e.g., Green Tree Servicing, LLC v. Stephens*, No. 1:07-cv-1103, 2008 WL 1925174, at *8 (S.D. Miss. April 29, 2008) (in accordance with *Hellenic*, applying direct benefits estoppel principles to require arbitration of claims asserted on behalf of minor children who occupied mobile home financed by the defendant). So too here.

The state court petition alleges and admits that Ms. Royal's minor child and her other family members or those sharing her home, Lee and Brown, were intended beneficiaries of the Contract she signed. What is more, the merits of the claims advanced by each of the state-court plaintiffs/federal defendants may only be determined by reference to the provisions of the Contract. That the petition asserts claims predicated on D.R. Horton's construction and warranty and other obligations assumed under the Contract triggers these direct benefits estoppel principles. Each of the state-court plaintiffs/federal defendants must be compelled to arbitrate their claims against D.R. Horton.

### C. Outstanding Issues

In its motion to compel arbitration, D.R. Horton requests two additional forms of relief. First, D.R. Horton requests an order enjoining all Royal Defendants from proceeding against D.R. Horton in state court. Second, invoking the arbitration provision, D.R. Horton requests an award of attorneys' fees, costs, and expenses incurred in this matter.

As to the first, the request is denied without prejudice to the request being renewed in conjunction with a motion for leave to file a proposed judgment in this matter, as ordered below.[23] Royal shall have an opportunity to respond. Any

[23] D.R. Horton does not request that *this* litigation be stayed pending arbitration, presumably because it limits the relief it seeks in its complaint to a final order or judgment directing Royal to proceed to arbitration and to recover attorney's fees and costs.

renewed request by D.R. Horton for an injunction shall include support for issuance of an injunction at this juncture and specific effectuating language.

Second, because based on the arbitration provision[24] D.R. Horton has demonstrated entitlement to attorney's fees, costs, and expenses, the request shall be granted with the proviso that D.R. Horton shall file a contested motion for attorney's fees, costs, and expenses in which it addresses the quantum sought and, if appropriate, notices the motion for submission before the magistrate judge.

## IV. CONCLUSION

In their state court lawsuit, the federal Defendants—Ms. Royal, on behalf of her minor child, T.R., and Lee and Brown—invoke and rely upon Ms. Royal's Contract with D.R. Horton. Specifically, the state-court petition asserts multiple claims predicated on alleged breaches of D.R. Horton's construction and warranty obligations under the Contract. The Contract's arbitration clause requires arbitration of all issues and expressly incorporates the AAA Rules, which delegate all issues to the arbitrator. Defendants have refused to submit their claims to arbitration and, instead, filed a lawsuit in state court, prompting D.R. Horton to file the instant federal action pursuant to the FAA, 9 U.S.C. § 4, in which it petitions the Court for an order directing these federal Defendants to proceed to arbitration in accordance with the parties' agreement. The FAA mandates that the federal Defendants be compelled to arbitrate their claims against D.R. Horton. Accordingly,

[24] ECF No. 11-2 ¶ 15(B) ("if either Party files a lawsuit and not an arbitration in breach of this provision, the non-breaching Party shall be entitled to recover all costs and fees, including attorneys' fees, incurred in compelling the matter to arbitration").

**IT IS ORDERED** that Defendant Royal's motion[25] to dismiss is **DENIED.**

**IT IS FURTHER ORDERED** that Plaintiff D.R. Horton's motion[26] to compel arbitration is **GRANTED**.

**IT IS FURTHER ORDERED** that, not later than **October 8, 2026**, Plaintiff D.R. Horton shall file a motion for leave to file a proposed judgment, along with a proposed judgment; Plaintiff D.R. Horton shall notice the motion for hearing so that Defendants have an opportunity to respond.

New Orleans, Louisiana, this 30th day of September, 2026.

BRANDON S. LONG
UNITED STATES DISTRICT JUDGE

[25] ECF No. 15.
[26] ECF No. 11.